# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEBBIE R.,<br>　　　Plaintiff<br>　　v.<br>ANDREW M. SAUL, Commissioner of Social Security,<br>　　　Defendant. | Case No. 2:18-cv-08022-GJS<br><br>**MEMORANDUM OPINION AND ORDER** |

## I. PROCEDURAL HISTORY

Plaintiff[1] filed a complaint seeking review of Defendant Commissioner of Social Security's ("Commissioner") denial of her application for Disability Insurance Benefits ("DIB"). The parties filed consents to proceed before the undersigned United States Magistrate Judge [Dkts. 9, 10] and briefs addressing disputed issues in the case [Dkt. 20 ("Pltf.'s Br."); Dkt. 25 ("Def.'s Br."); Dkt. 26 (Pltf.s Reply)]. The Court has taken the parties' briefing under submission without oral argument. For the reasons discussed below, the Court finds that this matter

---

[1] Plaintiff's name has been partially redacted in compliance with Fed. R. Civ. P. 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

should be remanded for further proceedings.

## II. ADMINISTRATIVE DECISION UNDER REVIEW

On February 17, 2015, Plaintiff filed an application for DIB, alleging disability beginning February 1, 2014. [Dkt. 17, Administrative Record ("AR") 185-186.] The Commissioner denied her initial claim for benefits on July 10, 2015. [AR 124-127.] On July 25, 2017, a hearing was held before Administrative Law Judge ("ALJ") Henry Koltys. [AR 48-78.] On August 28, 2017, the ALJ issued a decision denying Plaintiff's request for benefits. [AR 11-21.] Plaintiff requested review from the Appeals Council, which denied review on July 19, 2018. [AR 1-5.]

The ALJ evaluated Plaintiff's entitlement to DIB pursuant to the Commissioner's standard five-step sequential evaluation process. As an initial matter, the ALJ determined that Plaintiff acquired sufficient quarters of coverage to remain insured through September 30, 2017. [AR 13.] Therefore, Plaintiff was required to establish disability on or before that date to recover disability insurance benefits. Applying the five-step sequential evaluation process, the ALJ found that Plaintiff was not disabled. *See* 20 C.F.R. §§ 416.920(b)-(g)(1). At step one, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since February 1, 2014. [AR 13 (citing 20 C.F.R. § 416.971).] At step two, the ALJ found that Plaintiff suffered from the following severe impairments: hypertension, diabetes mellitus, fibromyalgia, mild degenerative disc disease of the lumbar and thoracic spine, and obesity. [AR 13.][2] The ALJ determined at step three that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. [AR 16 (citing 20 C.F.R. Part 404, Subpart P, Appendix 1; 20 C.F.R. §§ 416.920(d), 416.925, and

---

[2] At step two, the ALJ also found that Plaintiff had a medically determinable impairment of depression, however it was not severe. [AR 14.] (citing 20 C.F.R. § 404.1522 *et seq*.]

| | |
|---|---|
| 1 | 416.926.] |
| 2 | Next, the ALJ found that Plaintiff had the residual functional capacity (RFC) |
| 3 | to perform a range of light work, except she can frequently stoop and crouch; |
| 4 | occasionally climb ramps/stairs, kneel and crawl; and, she is precluded from |
| 5 | climbing ladders, ropes and scaffolds. [AR 16.] Applying this RFC, the ALJ found |
| 6 | at step four that Plaintiff was capable of performing her past relevant work as a |
| 7 | retail cashier and customer service representative and thus she is not disabled. [AR |
| 8 | 20.] |

### III. GOVERNING STANDARD

Under 42 U.S.C. § 405(g), this Court reverses only if the Commissioner's "decision was not supported by substantial evidence in the record as a whole or if the [Commissioner] applied the wrong legal standard." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and "must be 'more than a mere scintilla,' but may be less than a preponderance." *Id.* at 1110-11; *see Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and quotations omitted). This Court "must consider the evidence as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1002 (9th Cir. 2015) (quoting *Smolen v. Chater,* 80 F.3d 1273, 1279 (9th Cir. 1996)). If "the evidence is susceptible to more than one rational interpretation, we must uphold the [Commissioner's] findings if they are supported by inferences reasonably drawn from the record." *Molina,* 674 F.3d at 1111.

### IV. DISCUSSION

In her sole issue, Plaintiff contends that the ALJ erred at step two of the sequential evaluation by finding that she did not suffer from a severe mental impairment prior to her date last insured. [Pltf's Br. at 4-11.] The Court agrees and finds that remand is appropriate.

3

### A. Relevant Law

At step two of the sequential evaluation, the ALJ determines whether the claimant has a medically "severe" impairment or combination of impairments. *See* 20 C.F.R. §§ 404.1520(a)(4) (ii); *see also Smolen*, 80 F.3d 1273, 1289–90 (9th Cir. 1996) (citing *Bowen v. Yuckert*, 482 U.S. 140–41 (1987)). An impairment is severe when it significantly limits a claimant's "physical or mental ability to do basic work activities" and lasted or is expected to last "for a continuous period of at least 12 months." *See* 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii), (c), 404.1521(a); *accord* 20 C.F.R. §§ 416.920(a)(4)(ii), (c), 416.909. Basic work activities means "the abilities and aptitudes necessary to do most jobs," including: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers and usual work situations; and (6) dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b) & 416.921(b).

The Supreme Court has recognized that the Commissioner's "severity regulation increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account." *Yuckert*, 482 U.S. at 153. However, the regulation must not be used to prematurely disqualify a claimant. *Id.* at 158 (O'Connor, J., concurring). By its own terms, the evaluation at step two is a *de minimis* test intended to weed out the most minor of impairments. *Id.* at 153-54; *Edlund v. Massanari*, 253 F.3d 1152, 1158 (9th Cir. 2001) ("We have defined the step-two inquiry as a *de minimis* screening device to dispose of groundless claims."). An impairment is not severe only if the evidence establishes a slight abnormality that has only a minimal effect on an individual's ability to work.

*Smolen*, 80 F.3d at 1290 (internal citation omitted).

## B. The ALJ's Decision

The ALJ found that Plaintiff's medically determinable impairment of depression caused mild limitations in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and a mild limitation in adapting or managing herself. [AR 14-15.] Because the ALJ found that Plaintiff's mental impairment caused no more than minimal limitations in her ability to perform basic mental work activities, the ALJ concluded that it was not severe. [AR 15.] In reaching this conclusion, the ALJ considered the following evidence.

In May 2015, Plaintiff underwent a consultative psychiatric evaluation by Isadore Wendel, Ph.D. [AR 15, citing AR 348-350.] Plaintiff told Dr. Wendel that she suffers from depression and anxiety. Plaintiff indicated that she had no past psychiatric hospitalizations or psychiatric treatment and had never seen a psychiatrist. [AR 346.]

Dr. Wendel's mental status examination revealed unremarkable speech, and normal thought process. Plaintiff's affect was, however, "intense, dysphoric, irritated and teary" and her thought content revealed thoughts of suicide and feelings of isolation. Her concentration and memory were adequate for interview purposes. [AR 349.] Her mood was "depressed." [AR 349.] Dr. Wendel diagnosed "significant clinical depression" with a possible manifestation of "bipolar spectrum disorder." [AR 350.] He assessed Plaintiff with a Global Assessment of Functioning score of 59.[3] [AR 349.] In Dr. Wendel's opinion, on a psychological

---

[3] A GAF of 51-60 indicates moderate symptoms "(e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (*e.g.*, few friends, conflicts with peers or co-workers)." American Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental

5

basis, Plaintiff had mild restrictions in her daily activities. However, Plaintiff was moderately limited in her social functioning and she had moderate difficulties in concentration, persistence, and pace. [AR 350.]

In July 2015, State Agency medical consultant Marvin Blase, M.D., reviewed the medical evidence and listed Plaintiff's "affective disorders" as "severe." [AR 95.] Dr. Blase opined that Plaintiff's mental impairment moderately limited her ability to understand, remember, and carry out detailed instructions and moderately limited her ability to maintain attention/concentration for extended periods. Dr. Blase also found that Plaintiff had moderate limitations in her ability to complete a normal workday/workweek without interruptions from psychologically based symptoms. [AR 100.]

In September 2015, State Agency Psychiatrist G. Ikawa, M.D., reviewed the record and concurred that Plaintiff had moderate limitations in her ability to maintain attention and concentration and complete a normal workday and workweek without interruptions. [AR 115-116.] She also had moderate limitations in her ability to interact with the general public, coworkers, and supervisors. [AR 115-116.]

Additionally, although not addressed by the ALJ in his Step Two findings, Plaintiff's treating physician Lynn Pluche, D.O., who regularly prescribes Plaintiff's anti-depressant medication, completed an assessment form dated May 7, 2017. [AR 438.] Dr. Pluche opined that Plaintiff's depression symptoms would interfere with her attention and concentration about 25% of the workday. [AR 439.]

In making his Step Two finding, the ALJ afforded "partial" weight to the portions of the State Agency psychological assessments that opined that Plaintiff

---

Disorders 34 (4th ed. text rev. 2000) ("DSM-IV-TR").

could complete simple, routine tasks. But the ALJ found that all of the other findings by the State Agency and Consultative Psychiatrists, were not entitled to any weight because those opinions lacked support by the objective findings and the "longitudinal medical evidence." [AR 15.] The ALJ reasoned that Plaintiff "has not received any recent treatment for her mental condition besides [depression medication] refills" from her primary care physician. [AR 15.] Further, the ALJ found that "there is no indication in the record that the mental impairments would impose even a minimal limitation on [Plaintiff's] functioning and capacity to work." [AR 15.] Overall, the ALJ found the absence of any mental health treatment from a psychiatric professional was inconsistent with Plaintiff's allegations that she could not work due to her mental impairments. [AR 15.]

### C. Analysis

Here, the ALJ's finding that Plaintiff did not have a "severe" impairment is not clearly established by the medical evidence. As a threshold matter, the ALJ's finding that "there is no indication in the record that the mental impairments would impose even a minimal limitation on [Plaintiff's] functioning and capacity to work" is demonstrably false. As seen above, multiple physicians, including Plaintiff's treating physician, the consultative examiner and the State Agency physicians, found that Plaintiff's depression would cause moderate limitations in several areas including her concentration, persistence and pace and her ability to complete a normal work day/week. Moreover, the medical opinion evidence indicates that Plaintiff's depression causes moderate difficulties in her social functioning including her ability to interact with coworkers and supervisors. [AR 116, 350.] Thus, the ALJ's discussion of Plaintiff's condition does not fairly represent the significance of her depression and the limitations and complications arising from it, as reflected in the record. *See Webb*, 433 F.3d at 687 ("Although the medical record paints an incomplete picture of Webb's overall health during the relevant period, it includes evidence of problems sufficient to pass the *de minimis* threshold of step

two.").

In cherry picking the evidence in the record, the ALJ relied almost exclusively on Plaintiff's lack of mental health treatment to discredit both Dr. Wendel's findings and those of the state agency physicians in concluding that Plaintiff had only a mild mental impairment. [AR at 15. But "not seek[ing] treatment for a mental disorder until late in the day is not a substantial basis on which to conclude that [a doctor's] assessment of claimant's condition is inaccurate." *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996). It is improper for an ALJ to "reject[ ] claimant's assertions about his depression" for failing to seek psychiatric treatment. *Id.* "'[Claimant] may have failed to seek psychiatric treatment for his mental condition, but it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgement in seeking rehabilitation.'" *Id.* (*citing Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989). This reason fails to support the ALJ's characterization of Plaintiff's mental health history, and the record as a whole, which demonstrates a longitudinal history of suicidal ideation and treatment with psychiatric medication. *See Reddick v. Chater*, 157 F.3d 715, 722–23 (9th Cir. 1998) (An ALJ may not "cherry pick" from a record to support the conclusion, but rather must account for the context of the whole record.). Moreover, evidence of limited treatment does not negate the possibility that her mental impairment is severe.

Ultimately, the purpose of a step-two evaluation is to dispose of "groundless claims" and the evidence in the record before the ALJ was sufficient to conclude that Plaintiff's depression is a severe impairment under the *de minimis* test. There is no dispute in the record that Plaintiff did not seek mental health treatment outside of her primary care physician, who prescribed anti-depression medication. As minimal or conservative as that mental health treatment may be, when Plaintiff's symptoms were assessed by four different physicians, they all agreed that Plaintiff's mental impairment caused much more than mild limitations. Therefore, the Court cannot

say that Plaintiff's limited mental health treatment should be credited over glaring medical evidence demonstrating that her impairments more than minimally affected her ability to do basic work activities. *See Ortiz v. Commissioner of Social Sec.*, 425 Fed. Appx. 653, 655 (9th Cir. 2011) (unpublished) ("This is not the total absence of objective evidence of severe medical impairment that would permit us to affirm a finding of no disability at step two."). Because the evidence here established that Plaintiff suffers from depression causing moderate limitations in many of her areas of functioning, the ALJ erred by declining to find this ailment severe. *See Webb,* 433 F.3d at 687.

Finally, it cannot be said that the ALJ's error here was harmless. *See Stout v. Commissioner, Social Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) ("We recognize harmless error applies in the Social Security context."). Because Plaintiff was found to have at least one severe impairment (see AR 13), this case was not resolved at Step Two. Plaintiff does not assign error to the ALJ's finding at Step Three. Thus, any error in the ALJ's finding at Step Two is harmless, if all impairments, severe and non-severe, were considered in the determination of Plaintiff's RFC. *See Lewis v. Astrue*, 498 F.3d 909, 910 (9th Cir. 2007) (holding that a failure to consider an impairment in step two is harmless error where the ALJ includes the limitations of that impairment in the determination of the residual functional capacity). The record demonstrates this was not done. [*See* AR 16–20.] The ALJ did not consider or discuss any limitations resulting from Plaintiff's medically determinable mental impairment beyond Step Two. Rather, as part of the assessment of Plaintiff's credibility, the ALJ listed a variety of Plaintiff's daily activities including that she can take care of her personal needs, drive and go out alone. While the ALJ also listed that Plaintiff "has problems getting along with others," the ALJ failed to discuss or distinguish that finding with the corroborating medical opinion evidence stating that Plaintiff has moderate difficulties in social functioning. Given these omissions, the Court cannot say that the ALJ adequately

9

discussed Plaintiff's mental impairments later in the sequential evaluation. The Court therefore finds that the ALJ failed to properly account for Plaintiff's mental limitations in her RFC, and any error by failing to consider her depression severe at Step Two was not harmless. *See, e.g., Roque v. Berryhill,* No. 1:17-CV-00192-SKO, 2018 WL 1919835 (E.D. Cal. Apr. 24, 2018); *Inskeep v. Colvin*, No. 3:15–cv–00759–BR, 2016 WL 3509395, at *4 (D. Or. June 27, 2016) (concluding that the ALJ erred at Step Two when he found Plaintiff's mental impairments are nonsevere and finding that error is not harmless because the ALJ did not include any mental limitations in his assessment of Plaintiff's RFC.)

Accordingly, for the reasons stated above, the Court finds that Plaintiff is entitled to summary judgment on the claim that the ALJ erred at step two of the sequential evaluation by finding that Plaintiff's medically determinable depression was non-severe.

## V. CONCLUSION AND ORDER

The decision of whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. *Harman v. Apfel*, 211 F.3d 1172, 1175-78 (9th Cir. 2000). When no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *Id.* at 1179 ("the decision of whether to remand for further proceedings turns upon the likely utility of such proceedings"). But when there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate. *Id.*

The Court finds that remand is appropriate because the circumstances of this case suggest that further administrative review could remedy the ALJ's errors. *See INS v. Ventura*, 537 U.S. 12, 16 (2002) (upon reversal of an administrative determination, the proper course is remand for additional agency investigation or

10

explanation, "except in rare circumstances"); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014) (remand for award of benefits is inappropriate where "there is conflicting evidence, and not all essential factual issues have been resolved"); *Harman*, 211 F.3d at 1180-81.

The Court has found that, with respect to Plaintiff's depression, the ALJ erred at step two of the sequential evaluation process. On remand, the ALJ must evaluate Plaintiff's depression as a severe impairment at step-two and include limitations imposed by Plaintiff's depression in the ALJ's overall evaluation of Plaintiff.

For all of the foregoing reasons, **IT IS ORDERED** that:

(1) the decision of the Commissioner is REVERSED and this matter REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Memorandum Opinion and Order; and

(2) Judgment be entered in favor of Plaintiff.

**IT IS SO ORDERED.**

DATED: March 25, 2020

_____
GAIL J. STANDISH
UNITED STATES MAGISTRATE JUDGE